[No. 42158-5-II.   Division Two.   September 18, 2012.]

JAMES L. BRUMMETT, *Appellant*, v. WASHINGTON'S LOTTERY ET AL., *Respondents*.

*James Brummett*, pro se.

*Robert M. McKenna, Attorney General*, and *Patricia C. Fetterly, Assistant*, for respondents Washington's Lottery and lottery employees.

*Charles A. Willmes* (of *Merrick Hofstedt & Lindsey PS*) (*Paul Corcoran* of *Davis & Gilbert LLP*, of counsel), for respondent Cole & Weber Inc.

¶1 HUNT, J. — James L. Brummett appeals the superior court's CR 12(b)(6) dismissal of his claims against Cole & Weber Inc., doing business as Cole & Weber United (Cole & Weber), and its summary judgment dismissal of his claims against Washington's Lottery et al. (collectively Washington's Lottery). Brummett argues that Cole & Weber's advertisement that raffle tickets were "going fast" and Washington's Lottery's advertisements and the intervals at which "early bird" promotional prizes were awarded (1) were fraudulent; (2) violated the Consumer Protection Act;[1] (3) violated RCW 67.70.040(1); and (4) constituted "unreasonableness," "negligence," and "negligent misrepresentation."[2] Holding that the superior court did not err in dismissing Brummett's claims, we affirm.

---

[1] RCW 19.86.020.

[2] Br. of Appellant at 22, 29.

## FACTS

### I. Scheduled and Promotional Prizes for Thanksgiving Raffle

¶2 James L. Brummett has been an "avid" player of Washington's Lottery games since 1982. Clerk's Papers (CP) at 12. On August 19, 2010, Washington's Lottery Commission approved the "Thanksgiving Raffle" of 250,000 tickets to be sold at $10 per ticket. Raffle tickets were to be sold for 39 days, from October 17 through November 25. Washington's Lottery scheduled 2,720 prizes to be awarded from the monies the raffle generated;[3] if all 250,000 tickets were sold, the odds of winning one of the 2,720 scheduled raffle prizes was 1 in 92 at the start of the lottery; these prizes were awarded and paid out on November 25. In addition to the scheduled raffle prizes, the raffle offered 30 $500 "[e]arly [b]ird" promotional prizes to "drive demand by creating chatter among the player base throughout the sale of the raffle tickets."[4] CP at 199. These promotional "early bird" prizes "were awarded at intervals on sequentially purchased [raffle] tickets (that is, 'every nth ticket') based upon projections of [r]affle ticket sales"; they were paid instantly. CP at 188. These "nth" ticket intervals[5] were based initially on the number of tickets estimated to be sold and later adjusted up or down based on whether ticket sales were faster or slower than anticipated. These "early bird" prizes had no effect on the odds for or the size of the 2,720 scheduled Thanksgiving Raffle prizes.

---

[3] These scheduled prizes included 20 $50,000 prizes; 200 $250 prizes; and 2,500 $50 prizes.

[4] The raffle game structure, however, did not include these "early bird" promotional prizes, which were separately funded by Washington's Lottery's normal business operations, not from raffle ticket sales.

[5] For example, if the "nth" ticket interval was 8,000, then a promotional prize was awarded automatically for every 8,000th ticket purchased. Thus, purchasers of ticket number 8,000, 16,000, 24,000, etc., won promotional "early bird" prizes.

¶3 Stephen Wade, a research and development manager with Washington's Lottery, calculated the initial "nth" ticket interval for the Thanksgiving Raffle "early bird" prizes. Working from the assumption that the raffle's 250,000 tickets would sell out in 3 weeks, Wade initially set the "nth" ticket interval at 8,000. Wade believed that the "nth" ticket interval should remain at 8,000 so that all "early bird" prizes would be given out within 3 weeks of the raffle tickets' going on sale.[6] Under these assumptions, all "early bird" promotional prizes would be paid out 21 days into the 39-day Thanksgiving Raffle.

## A. Advertising

¶4 Washington's Lottery staff created all "early bird" advertising in-house. CP at 198. "Early bird" prize advertising was limited to the Washington's Lottery web site, point of sale materials, and bar-coded purchase slips for ticket vending machines. None of these "early bird" prize advertisements revealed the method used to select the instant winners or the "nth" ticket interval winner-selection process.

¶5 Cole & Weber was the advertising vendor for the Washington's Lottery Thanksgiving Raffle before and during the raffle; but it did not create any advertising for the "early bird" prizes. CP at 198. Cole & Weber worked with the Washington's Lottery staff to create an advertisement campaign focusing on the anticipated scarcity of raffle tickets and "the limited time offer of the game." CP at 198. Cole & Weber's two radio advertisements, which aired before the raffle tickets went on sale, (1) mentioned the $50,000 top scheduled raffle prize; and (2) contained statements about the sale of raffle tickets, such as, "Washington's Lottery Raffle tickets are going fast, so go, go, go," and,

---

[6] Washington's Lottery's research revealed that players "responded specifically to the idea of a weekly [promotional] prize of $500 for the first three weeks." CP at 487.

"People want those tickets for Washington's Lottery Raffle, and they're going fast"; but (3) did not mention the separate "early bird" promotional prizes.[7]

## B. Brummett's Ticket Purchases

¶6 Around October 10, a week before the first raffle tickets were to go on sale, Brummett saw point of sale advertising about the Thanksgiving Raffle, which noted the raffle's start date, October 17, and that "the chance to win $50,000 was going fast." CP at 340. On October 14, Brummett left home for a camping and deer hunting trip, also aware of the 30 "early bird" prizes. While away on his trip, he heard the Cole & Weber radio advertisements stating that the raffle tickets were "going fast," the day before they went on sale, October 16. CP at 232. Believing that the "early bird" prizes would be awarded within the first 30,000-50,000 tickets purchased,[8] on October 20, Brummett made a 70-mile round trip in search of raffle tickets to purchase 2 raffle tickets.

¶7 By November 18, Brummett had purchased a total of nine raffle tickets. While purchasing the ninth ticket, Brummett saw on the "Lottery screen" that eleven "early bird" prizes still remained. CP at 337. The next day, he called Jana Jones, director of legal services with Washington's Lottery, and informed her about his concern that, based on the number of "early bird" prizes left and the number of raffle tickets sold, all of the "early bird" prizes would not be given out.

## C. Adjustment of "Early Bird" Prize Interval

¶8 Jones consulted with Wade, who reviewed the raffle ticket sales numbers and determined that, at the current

---

[7] CP at 248 (Decl. of James L. Brummett in Opp'n to Cole & Weber's Mot. To Dismiss (Ex. 3)).

[8] Brummett did not explain nor does the record show how he came to believe that "early bird" prizes would be awarded within the first 30,000-50,000 raffle tickets sold.

pace, all of the "early bird" prizes would not be given away. Harold W. Hanson, director of Washington's Lottery, then ordered the "nth" ticket interval value to be reset from every 8,000th ticket sold to every 1,000th ticket sold to ensure that all "early bird" prizes were awarded. Jones informed Brummett about these changes, and Brummett bought two more raffle tickets.

¶9 The raffle ticket sales ended on November 25, by which point 211,755 of the 250,000 available raffle tickets had been sold, and all "early bird" prizes had been awarded. The shortfall in raffle ticket sales meant that contestants had 1 in 77 odds of winning a scheduled raffle prize, which was better than the *advertised* 1 in 92 odds of winning.

### D. Public Records Disclosure Requests

¶10 Brummett made multiple public disclosure requests of Washington's Lottery. In response to his requests, he obtained an e-mail dated November 29, 2010, sent by Lottery Deputy Director Julie Martin,[9] which contained no text but said in the subject line, "nth ticket setting for fall 2010 raffle.xls."[10] Martin attached a Microsoft Excel spreadsheet, which said, "Ideally, [the raffle] would be done as a draw from the first week's pool of sold tickets .... Our intent is to sell through 250,000 tickets in 3 weeks (we allow longer)."[11]

### II. Procedure

¶11 On February 8, 2011, Brummett sued Cole & Weber, Washington's Lottery, and some of the Lottery's directors, commission members, and employees individually. He

---

[9] Brummett refers to this as a "smoking gun" e-mail. Br. of Appellant at 35.

[10] CP at 292 (Decl. of James L. Brummett in Opp'n to Cole & Weber's Mot. To Dismiss (Ex. 10)).

[11] CP at 293 (Decl. of James L. Brummett in Opp'n to Cole & Weber's Mot. To Dismiss (Ex. 10)).

asked the superior court to maintain the lawsuit as a class action and to certify him as class representative.[12] Cole & Weber moved to dismiss Brummett's claims under CR 12(b)(6) for failure to state a claim; Washington's Lottery moved for summary judgment dismissal of Brummett's claims. The superior court stayed discovery until after ruling on Cole & Weber's motion to dismiss.

¶12 On May 20, the superior court dismissed with prejudice all of Brummett's claims against Cole & Weber under CR 12(b)(6). And it granted summary judgment to Washington's Lottery. Brummett appeals.

## ANALYSIS

### I. CLAIMS AGAINST COLE & WEBER

¶13 Brummett assigns error to the superior court's CR 12(b)(6) dismissal of his claims against Cole & Weber because their advertising campaign stating that raffle tickets were "going fast" constituted (1) fraud; (2) a violation of the Consumer Protection Act (ch. 19.86 RCW); (3) a breach of contract with Washington's Lottery by violating RCW 67.70.040(1); and (4) "unreasonableness," negligence, and negligent misrepresentation. Br. of Appellant at 11, 24. He also contends that the superior court "erred in not treating Cole & Weber's [m]otion to [d]ismiss as a [m]otion for [s]mmary [j]udgment." Br. of Appellant at 20. Brummett's arguments fail.

### A. Standard of Review

#### 1. CR 12(b)(6) Motion To Dismiss versus Summary Judgment

¶14 Brummett contends that summary judgment, not CR 12(b)(6), was the proper procedure for considering

---

[12] Apparently the superior court denied this request.

Cole & Weber's motion to dismiss because, at the hearing on its motion to dismiss, their counsel read transcripts of their advertisements, which transcripts were exhibits attached to Brummett's Declaration in Opposition to Cole & Weber's Motion To Dismiss. Although Brummett's complaint also refers to these advertisements, we agree that summary judgment was the more appropriate procedure for considering these matters outside the pleadings.[13]

¶15 The Washington Supreme Court has consistently held that we treat a CR 12(b)(6) motion to dismiss for failure to state a claim as a motion for summary judgment when matters outside the pleadings are presented to, and not excluded by, the superior court. *Sea-Pac Co. v. United Food & Commercial Workers Local Union 44*, 103 Wn.2d 800, 802, 699 P.2d 217 (1985).

On a CR 12(b)(6) motion, *no matter outside the pleadings*[14] *may be considered, and the court in ruling on it must proceed without examining depositions and affidavits* which could show precisely what, if anything, the plaintiffs could possibly present to entitle them to the relief they seek. Ordinarily, whenever a complaint is facially adequate and the possibility of obtaining relief depends on the factual showing the plaintiff can make, a dismissal motion should be treated as a motion for summary judgment, if only to keep the court from having to act com-

---

[13] We note that in *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 726, 189 P.3d 168 (2008), Division One of our court did not treat a CR 12(b)(6) motion to dismiss as a motion for summary judgment, despite the superior court's consideration of matters outside the pleadings. These outside matters, however, were either specifically mentioned in Rodriguez's complaint, as here, or matters of public record. *Rodriguez*, 144 Wn. App. at 726. Although technically we might follow the *Rodriguez* review process here, in an abundance of caution, because Cole & Weber's CR 12(b)(6) Motion To Dismiss relies on matters outside the pleadings, we choose to review it as a motion for summary judgment. In our view, this latter procedure will conserve resources that we would otherwise expend debating the proper procedure; and the result on appeal will be the same.

[14] CR 7(a) defines "pleadings" as follows:

**Pleadings.** There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross claim, if the answer contains a cross claim; a third party complaint, if a person who was not an original party is summoned under the provisions of rule 14; and a third party answer, if a third party complaint is served. No other pleading shall be allowed.

pletely in the dark as to the actual nature of the plaintiff's cause of action.

*Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 297, 545 P.2d 13 (1975) (emphasis added) (citation omitted).

¶16 In its order granting Cole & Weber's motion to dismiss, the superior court noted that it had reviewed defendant Cole & Weber's Motion To Dismiss, plaintiff's Motion in Opposition to Cole & Weber's Motion To Dismiss, Declaration of James L. Brummett in Opposition to Cole & Weber's Motion to Dismiss (with exhibits), and defendant Cole & Weber's Reply in Support of Motion To Dismiss. Because the superior court considered Brummett's declaration, we treat Cole & Weber's CR 12(b)(6) motion as a motion for summary judgment. *Brown*, 86 Wn.2d at 297.

### 2. Summary Judgment

¶17 We review de novo the superior court's grant of summary judgment. *Briggs v. Nova Servs.*, 166 Wn.2d 794, 801, 213 P.3d 910 (2009). Summary judgment is proper when the record presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Briggs*, 166 Wn.2d at 801. We view all facts and reasonable inferences in the light most favorable to the nonmoving party. *Briggs*, 166 Wn.2d at 801. The moving party bears the initial burden of showing an absence of material fact, which can be satisfied by pointing out to the court an absence of evidence in the plaintiff's case. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

¶18 Once a moving party satisfies its initial showing, the nonmoving party must set forth specific facts disclosing a genuine issue of material fact that sufficiently rebuts the moving party's contentions. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). A nonmoving party, however, cannot simply rely on speculation or argumentative assertions that unresolved factual issues remain. *KS Tacoma*

*Holdings, LLC v. Shorelines Hearings Bd.*, 166 Wn. App. 117, 126, 272 P.3d 876, *review denied*, 174 Wn.2d 1007 (2012).

## B. Fraud

¶19 Brummett asserts that Cole & Weber's advertisements that raffle tickets were "going fast" was "[c]ommon law gambling fraud" because it was equivalent to "unfair and non-equitable play." Br. of Appellant at 22, 24. But Brummett fails to cite any law recognizing a common law cause of action for "gambling fraud"; nor are we aware of any. Accordingly, his gambling fraud claim fails as a matter of law.

¶20 Even if we were to consider Brummett's common law "gambling fraud" claim as a common law fraud claim, it would still fail as a matter of law. The nine elements of fraud are (1) representation of existing fact, (2) materiality of the representation, (3) falsity, (4) the speaker's knowledge of its falsity, (5) the intent of the speaker that representation be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely on the representation, *and* (9) resulting damages. *Poulsbo Grp., LLC v. Talon Dev., LLC*, 155 Wn. App. 339, 345-46, 229 P.3d 906 (2010). Brummett failed to meet all nine of these elements.

¶21 In his declaration, Brummett admitted that he had heard the raffle ticket sale advertisements *before* the tickets went on sale, when he would have known that these advertisements were not true. Thus, Brummett could not show a genuine issue of material fact about his ignorance of the falsity of the representations. *Poulsbo Grp., LLC*, 155 Wn. App. at 346.

¶22 Nor could Brummett show a genuine issue of material fact about the materiality of the statements that raffle tickets were "selling fast." Br. of Appellant at 12; CP

at 14. In his complaint, Brummett alleged that the advertisements "induce[d] the public to purchase tickets";[15] he did not, however, support this assertion with evidence that he would produce if he defeated summary judgment and the case went to trial.

¶23 Similarly, in his declaration in opposition to Cole & Weber's motion to dismiss and in his appellate brief, Brummett claimed that these advertisements "affected [his] purchase timing" and caused him to make a 70-mile round trip in hopes of winning an "early bird" prize. Br. of Appellant at 12. But he did not attempt to show that these advertisements made any claims about either the scheduled raffle prizes or the "early bird" prizes or that these advertisements misled him about the total number of prizes, the odds of winning, or the amount of money at stake. Thus, Cole & Weber's possible representations about the speed of sale, even if false, were not material to the Thanksgiving Raffle under any set of facts that Brummett has offered. We hold, therefore, that summary judgment dismissal of Brummett's gambling fraud claim was proper.

## C. Consumer Protection Act

¶24 Brummett next contends that the superior court erred in "not making a full decision against Cole & Weber . . . as to violating the Consumer Protection Act." Br. of Appellant at 24. Again, Brummett's claim fails as a matter of law because, based on his own declaration, which we assume places the facts in the light most favorable to him, there were no genuine issues of material fact.[16]

---

[15] CP at 18-19.

[16] Cole & Weber contend that, as an agent for Washington's Lottery, it is "not subject to" the Consumer Protection Act. Br. of Resp't at 23-24 (citing *Ernst Home Ctr., Inc. v. United Food & Commercial Workers Int'l Union, AFL-CIO, Local 1001*, 77 Wn. App. 33, 46-48, 888 P.2d 1196 (1995) (Consumer Protection Act claim barred against union's law firm because labor unions are exempt under the Consumer Protection Act)). Even assuming without deciding that Cole & Weber is not exempt, Brummett's claim fails.

¶25 To prevail on a Consumer Protection Act claim, a plaintiff must show (1) an unfair or deceptive act or practice (2) occurring in trade or commerce, (3) impacting the public interest, (4) injury to the plaintiff's business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986); RCW 19.86.020. Implicit in whether an act is "deceptive" is " 'the understanding that the actor *misrepresented* something of material importance.' " *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 166, 159 P.3d 10 (2007) (quoting *Hiner v. Bridgestone/Firestone, Inc.*, 91 Wn. App. 722, 730, 959 P.2d 1158 (1998), *rev'd on other grounds*, 138 Wn.2d 248, 978 P.2d 505 (1999)), *aff'd sub nom. Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 204 P.3d 885 (2009). The first two elements of a Consumer Protection Act claim also "may be established by a showing that the alleged act constitutes a per se unfair trade practice." *Hangman*, 105 Wn.2d at 786.

¶26 A per se unfair trade practice exists when a defendant violates a statute that the legislative body has declared "to constitute an unfair or deceptive act in trade or commerce." *Hangman*, 105 Wn.2d at 786. A per se violation requires (1) the existence of a *pertinent* statute that contains a specific declaration of public interest,[17] (2) its violation, (3) that the violation proximately caused the damages the plaintiff sustained, and (4) that the plaintiff was within the class of people the statute sought to protect. *Fid. Mortg. Corp. v. Seattle Times Co.*, 131 Wn. App. 462, 471, 128 P.3d 621 (2005). Brummett invites us to find a per se violation by "[looking] at the use of RCW 67.70.040(1) in [his] complaint." Br. of Appellant at 26. His complaint did not fulfill the first requirement because RCW 67.70.040 does not contain a specific legislative declaration of "public interest" and, therefore, cannot be the basis of a per se

---

[17] A pertinent statute "must contain a specific declaration of public interest." *Crane & Crane, Inc. v. C&D Elec., Inc.*, 37 Wn. App. 560, 565, 683 P.2d 1103 (1984).

Consumer Protection Act claim. *Crane & Crane, Inc. v. C&D Elec., Inc.*, 37 Wn. App. 560, 565, 683 P.2d 1103 (1984).

¶27 Furthermore, to the extent Brummett argues the advertisements were deceptive, his claim fails as a matter of law because he did not target the creator of this alleged deception. Even if we assume that the advertisements might have induced Brummett or other players to purchase raffle tickets in hopes of winning "early bird" prizes, these claims against Cole & Weber fail because all "early bird" advertising was created in-house by the Washington's Lottery staff, not by Cole & Weber. Simply stated, Cole & Weber's "going fast"[18] statements could not be categorized as " '*misrepresent[ing]* something of material importance.' " *Stephens*, 138 Wn. App. at 166 (quoting *Hiner*, 91 Wn. App. at 730).

### D. Breach of Contract

¶28 Brummett also failed to support his claim against Cole & Weber for violating the "Conformance and Precedence paragraphs in their advertising contract . . . with Washington's Lottery[,] which states that they comply with RCW 67.70.040(1)." Br. of Appellant at 26. RCW 67.70-.040(1) requires any state lottery to "produce the maximum amount of net revenues for the state consonant with the *dignity* of the state." (Emphasis added.) Attempting to apply RCW 67.70.040(1) as a standard of conduct, Brummett asserts that Cole & Weber breached its contract with the State because "more dignified advertisements would have been . . . based on excellence and honorability." Br. of Appellant at 26-27. But Brummett could not assert this statutory contract claim because he was neither a party to the contract nor an intended third party beneficiary of Cole & Weber's contract with the State.[19] *See Postlewait*

---

[18] CP at 231.

[19] Moreover, Washington courts have never recognized an actionable claim under RCW 67.70.040(1).

*Constr., Inc. v. Great Am. Ins. Cos.*, 106 Wn.2d 96, 99, 720 P.2d 805 (1986).

### E. Negligence, Negligent Misrepresentation, and "Unreasonableness"

¶29 Brummett next contends that the superior court "erred in not making a decision against Cole & Weber . . . as to unreasonableness, negligence and brought up now, negligent misrepresentation of two . . . of their radio 2010 raffle advertisements." Br. of Appellant at 22. A negligent misrepresentation occurs when

> "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*ESCA Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 826, 959 P.2d 651 (1998) (quoting RESTATEMENT (SECOND) OF TORTS § 552(1) (1977)). Brummett's negligent misrepresentation claim failed because he was not justified in relying on the "going fast" information because, as he admitted, he heard and saw the advertisements before the tickets went on sale. CP at 231. Thus, by his own admission, there was no genuine issue of material fact that these advertisements induced him to buy lottery tickets that he would not otherwise have purchased.

### II. CLAIMS AGAINST WASHINGTON'S LOTTERY

¶30 Brummett also argues that the superior court erred in granting summary judgment dismissal of his claims against Washington's Lottery because its advertisements and decision to set, and later to change, the "nth" ticket interval at which "early bird" promotional prizes were awarded constituted (1) fraud; (2) a violation of RCW 67.70.040(1);

and (3) negligence, negligent misrepresentation, and "unreasonableness." Br. of Appellant at 34. This argument also fails.

## A. Fraud

¶31  Brummett's fraud claims against Washington's Lottery rest on whether Washington's Lottery committed "gambling fraud," which Brummett asserts occurs when "play" is inequitable and unfair. Br. of Appellant at 36. But, again, Brummett fails to cite any law recognizing a common law cause of action for "gambling fraud." Br. of Appellant at 36. And again, his gambling fraud claim fails as a matter of law.[20]

## B. RCW 67.70.040(1)

¶32  Brummett next contends that the superior court "erred in not deciding against Washington's Lottery . . . for not complying with RCW 67.70.040(1)." Br. of Appellant at 32. Brummett contends that Washington's Lottery violated RCW 67.70.040(1) through Cole & Weber's advertisements stating that tickets are "selling fast," by setting the "nth" ticket interval at 8,000, and by later changing the "nth" ticket interval to 1,000.

¶33  Brummett relies solely on the following text to "justify" bringing a claim under RCW 67.70.040(1): " '[I]n order that such [l]ottery produce the maximum amount of net revenues for the state consonant with the dignity of the state and the general welfare of the people.' " Br. of Appellant at 16 (quoting RCW 67.70.040(1)). But he fails to

---

[20] Even were we to consider Brummett's gambling fraud claim as a common law fraud claim, his claim would still fail as a matter of law because, again, his own statements undermined it: Brummett heard and saw the "selling fast" advertisements before the raffle tickets ever went on sale. CP at 232. Furthermore, point of sale screens alerted prospective purchasers to the number of "early bird" prizes remaining. These facts showed that Brummett was not justified in relying on the alleged misrepresentations, thus undermining his fraud claim as a matter of law. *Poulsbo Grp., LLC*, 155 Wn. App. at 345-46.

explain how RCW 67.70.040(1) satisfies the three-part test for establishing a statutorily implied cause of action. *See Ducote v. Dep't of Soc. & Health Servs.*, 167 Wn.2d 697, 703, 222 P.3d 785 (2009). Because he fails to support his contention with developed argument and citations to case law establishing or implying his asserted cause of action, as RAP 10.3(a)(6) requires, we need not further consider it.[21] *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

## C. Negligence, Negligent Misrepresentation, and "Unreasonableness"

¶34 Brummett also asserts that the superior court "erred in not making a decision against Washington's Lottery . . . as to unreasonableness, negligence and negligent misrepresentation" for raffle placard advertisements stating that tickets are "selling fast," the "early bird" prize structure, and Washington's Lottery's decision to subsequently change the "nth" ticket interval. Br. of Appellant at 34.

¶35 Brummett makes only bald assertions that Washington's Lottery's conduct constituted "unreasonableness," negligence, and negligent misrepresentations. Br. of Appellant at 34. Again, he cites no authority to support the claims

---

[21] A cause of action may be implied from a statutory provision when the legislature creates a right or obligation without a corresponding remedy. *Ducote*, 167 Wn.2d at 703. An implied cause of action exists if (1) the plaintiff is within the class of people specially benefited by the statute, (2) legislative intent supports the creation of a cause of action, and (3) implying a remedy is consistent with the underlying purpose of the legislation. *Ducote*, 167 Wn.2d at 703.

We again note, however, that no Washington appellate court has allowed an action under RCW 67.70.040(1); and, on its face, the provisions of the statute do not create a protected class or any private right of action. Nor can we envision how Brummett might satisfy even the first prong of the test because (1) lotteries must be run to produce maximum revenues "consonant with the dignity of the state and the general welfare of the people," RCW 67.70.040(1); and (2) on its face, RCW 67.70.040(1) does not create a special class of people the legislature intended the statute to benefit, instead specifically promulgating it for "the general welfare of the people."

of "unreasonableness" or negligence,[22] contrary to RAP 10.3(a)(6). Accordingly, we do not further consider them.

¶36 His negligent misrepresentation claim also fails because "selling fast" and "early bird" are not sufficiently definite to justify his reliance on those statements, especially where, as we have previously noted, he admitted knowing that the tickets were not even selling yet at the time he heard these advertisements. *See ESCA Corp.*, 135 Wn.2d at 826. Furthermore, Brummett does not even attempt to show how any facts he asserted supported the elements of either negligence or negligent misrepresentation. Accordingly, these claims also fail as a matter of law.

III. DISMISSAL OF BRUMMETT'S CLAIMS WITH PREJUDICE

¶37 Finally, Brummett assigns error to the superior court's dismissal of all his claims with prejudice. He argues that the dismissals should have been without prejudice so that he can freely amend his claims against Cole & Weber and Washington's Lottery. Again, he cites no authority to support this assertion, contrary to RAP 10.3(a)(6).[23] Therefore, we do not further address this argument.

¶38 We affirm.

WORSWICK, C.J., and JOHANSON, J., concur.

Review denied at 176 Wn.2d 1022 (2013).

---

[22] To the extent that Brummett might be attempting to rely on case law in the part of his brief addressing his negligent misrepresentation claims against Cole & Weber, we have already found those arguments unpersuasive.

[23] Instead, he cites only the following nonbinding federal procedure:

The courts have never definitively resolved the question of whether a dismissal for failure to state a claim is with, or without prejudice to the plaintiff's right to refile the action. The most probable result is that the dismissal is with prejudice unless the trial court specifies that the dismissal is without prejudice. This is the rule in federal courts.

Br. of Appellant at 28 (citing JACK H. FRIEDENTHAL, MARY KAY KANE & ARTHUR R. MILLER, CIVIL PROCEDURE § 14.8 (2d ed. 1993)).