FILED
COURT OF APPEALS
DIVISION II
2015 FEB -3 AM 9: 07
STATE OF WASHINGTON
BY_____
DEPUTY

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| ROBERT SUDAR, a Washington resident; CHRIS DOUMIT, a Washington resident; JOHN HANSON, a Washington resident; MICHAEL WULLIGER, a Washington resident; JIM LONG, a Washington resident,<br><br>      Appellants,<br><br>  v.<br><br>DEPARTMENT OF FISH AND WILDLIFE COMMISSION,<br><br>      Respondent,<br><br>  and<br><br>COASTAL CONSERVATION ASSOCIATION,<br><br>      Intervenor. | No. 45378-9-II<br><br><br>UNPUBLISHED OPINION |

  MELNICK, J. — Robert Sudar, Chris Doumit, John Hanson, Michael Wulliger, and Jim Long,[1] commercial fishers, appeal from a superior court order dismissing their petition for judicial review of the Washington Fish and Wildlife Commission's ("Commission") Columbia River Basin Salmon Management Policy C-3620. Sudar challenges the trial court's finding that Policy C-3620 is not a rule defined by the Washington Administrative Procedure Act[2] ("APA") and that no judicial claim for relief may be asserted. Sudar argues Policy C-3620 is a rule because it is a directive or regulation of general applicability, and it establishes, alters, or revokes qualifications

---

[1] For clarity and not intending any disrespect, and because all of the commercial fishers assert the same positions, the parties will hereafter collectively be referred to as "Sudar."

[2] Ch. 34.05 RCW.

or requirements relating to the enjoyment of benefits or privileges conferred by law. The Commission argues that Policy C-3620 reflects its vision for and provides guidance to the Washington Fish and Wildlife Department ("Department") on the salmon management in the Columbia River Basin. We reject Sudar's claims and hold that Policy C-3620 is not a rule. Accordingly, we affirm the trial court's dismissal.

## FACTS

The Commission develops policies that will guide the Department in its management of state resources. *See* RCW 77.04.013 and RCW 77.04.055(1). Columbia River recreational and commercial seasons for salmon are established by rules. Some are permanent and some are temporary. Permanent rules are promulgated through rule-making procedures under the APA. Fishery season rules are developed annually; however, adjustments are made, as needed, during the season. Emergency rules, also promulgated through the APA, are utilized to make seasonal changes in response to real-time data about fish stocks, fishery catch information, and fishery management needs.

The process for developing fishery rules involves getting input through The North of Falcon stakeholder consultation process and the Columbia River Compact.[3] The North of Falcon process is a pre-season public process that works with all harvest groups to develop recommendations for summer and fall fishery seasons. It considers conservation objectives, legal requirements, individual management policies of states and tribes, and policy objectives. The

---

[3] The Columbia River Compact is the agreement between the states of Washington and Oregon on fisheries in the Columbia River. RCW 77.75.010; RCW 77.75.020. In keeping with customary usage, "compact" is also used in this opinion to refer to Washington and Oregon agency directors or their representatives acting on behalf of their respective Fish and Wildlife Commissions in the administration of this agreement.

2

Columbia River Compact accepts input from joint staff, other agencies, tribes, and the public, and it allows Washington and Oregon to develop and adopt concurrent fishery rules. Once Columbia River Compact participants reach an agreement, an "Action Notice" is published. Clerk's Papers (CP) at 370. It provides information to the public about management decisions that were reached and rules that will follow. The actual regulation of fishery activity occurs when each state converts Columbia River Compact decisions to enforceable fishery rules. Policy objectives guide adoption of fishery rules.

In January 2013, after a series of public meetings, the Commission adopted Policy C-3620 and filed it with the code reviser as a policy statement. This Policy replaced two prior policy statements adopted in 2009 and 2011. Policy C-3620 reflects the Commission's vision for salmon fisheries in the mainstem of the Columbia River and the Snake River. It provides the Department a set of guiding principles and a series of actions it may follow to improve the management of salmon in the Columbia River Basin.

Policy C-3620 outlines a number of objectives, including phasing out the use of non-selective gill nets in non-tribal commercial fisheries in the Columbia River's mainstem and the transition of gill net use to off-channel areas. Additionally, Policy C-3620 envisions a gradual increase of shares of Endangered Species Act (ESA)-listed salmon for recreational fishers.

The Commission has authority through the APA to adopt rules regulating the harvest of fish and wildlife resources and to delegate its powers and duties to the director of the Department. RCW 77.04.055(2), (3), & (5); RCW 77.04.130; RCW 77.04.020. The Commission delegated authority to the Director to adopt permanent and emergency rules to implement Policy C-3620 objectives. In 2013, the Department adopted a series of fishery rules to implement the adaptive objectives set forth in Policy C-3620. Generally, the rules adhered to the vision set forth in Policy

C-3620 by apportioning ESA-listed salmon between recreational and commercial fishers and limiting the use of gill nets. *See* Emergency Rule-Making Order (ERMO) WSR 13-08-007 (effective Mar. 21, 2013); ERMO WSR 13-09-005 (effective Apr. 4, 2013); ERMO WSR 13-09-015 (effective Apr. 9, 2013); ERMO WSR 13-11-055 (effective May 14, 2013); ERMO WSR 13-13-012 (effective June 8, 2013); ERMO WSR 13-14-003 (effective June 19, 2013); ERMO WSR 13-15-047 (effective July 15, 2013); ERMO WSR 13-16-024 (effective July 26, 2013); ERMO WSR 13-16-025 (effective July 26, 2013). In contrast, some of the rules deviated from Policy C-3620 by allowing for increased commercial allocation of ESA-listed salmon and the use of large-net gill net gear. ERMO WSR 13-04-037 (effective Jan. 31, 2013); ERMO WSR 13-11-123 (effective May 22, 2013); ERMO WSR 13-12-011 (effective May 24, 2013); ERMO WSR 13-12-036 (effective May 29, 2013); ERMO WSR 13-13-027 (effective June 16, 2013).

## PROCEDURAL FACTS

Sudar sought to invalidate Policy C-3620 and filed a petition for judicial review of administrative rules in Thurston County Superior Court pursuant to RCW 34.05.570(2). He asserted that under the APA, the policy was, in fact, a rule and he could properly seek judicial review of it. RCW 34.05.570(2)(c); RCW 34.05.010(16). Sudar characterized Policy C-3620 as a "Regulation," and alleged the Commission exceeded its statutory authority by adopting Policy C-3620 without following the APA's rule-making procedures. Sudar urged the court to invalidate the "Regulation" because the Commission exceeded its statutory authority by "adopting a rule" that conflicted with the Commission's statutory mandate to maintain a stable fishing industry in the state. CP at 7.

The Commission moved to dismiss pursuant to CR 12(b)(6). The Commission argued that Policy C-3620 could not be challenged under RCW 34.05.570(2) because it did not meet the APA

definition of a rule, it provided guidance for future agency action; it did not have any legally binding effect on any person outside the agency, and it had no legally enforceable regulatory effect, thus no justiciable controversy and no claim for relief exist. CP at 24. Coastal Conservation Association intervened as respondents. It concurred with the Commission's motion to dismiss, also arguing that Policy C-3620 does not fit within the definition of a rule as established in the APA.

The trial court granted the Commission's motion to dismiss. The trial court concluded that Policy C-3620 is not a rule as defined in the APA, therefore, no justiciable controversy existed under RCW 34.05.570(2).

Sudar appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

Here, the superior court considered all declarations and exhibits the parties submitted in support of the pleadings. "[W]hen matters outside the pleadings are presented to, and not excluded by, the superior court," we treat a CR 12(b)(6) motion to dismiss as a motion for summary judgment. *Brummett v. Wash.'s Lottery*, 171 Wn. App. 664, 673, 288 P.3d 48 (2012); CR 12(c). As a result, we treat the trial court's grant of the Commission's CR 12(b)(6) motion as a summary judgment order.

We review a summary judgment order de novo. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Loeffelholz*, 175 Wn.2d at 271. "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the

outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). If reasonable minds could reach but one conclusion, the issue may be determined on summary judgment. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40, 46 (2014).

## II. THE POLICY IS NOT A RULE

Sudar appeals the trial court's legal conclusion that Policy C-3620 is not a rule as defined by RCW 34.05.010(16). We hold that Policy C-3620 is not a rule subject to review under the APA because it is not a directive or regulation of general applicability, and it does not establish, alter, or revoke qualifications or requirements relating to the enjoyment of benefits or privileges conferred by law.[4]

Statutory interpretation is a question of law we review de novo. *State v. Franklin*, 172 Wn.2d 831, 835, 263 P.3d 585 (2011). We give effect to the plain meaning of the statute. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We discern plain meaning from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009). When a statutory term is undefined, it is given its ordinary meaning, which may be discerned from the dictionary. *Estate of Haselwood v. Bremerton Ice Arena, Inc.*, 166 Wn.2d 489, 498, 210 P.3d 308 (2009). If, after this inquiry, the statute is

---

[4] As an initial matter, Sudar failed to provide corresponding issue statements to the assignment of error as RAP 10.3(a)(4) requires. Additionally, Sudar assigned error only to the trial court's findings, not the summary judgment order. We waive Sudar's technical violations of the appellate rules to reach the merits of this case because Sudar's briefing makes the nature of the challenge clear, the violation is minor, there is no prejudice to the opposing party, and there is minimal inconvenience to the appellate court. *Union Elevator & Warehouse Co., Inc. v. State ex rel. Dep't of Transp.*, 144 Wn. App. 593, 601, 183 P.3d 1097 (2008) (citing *State v. Neeley*, 113 Wn. App. 100, 105, 52 P.3d 539 (2002)); RAP 1.2(a).

susceptible to more than one meaning, we may look to aids of construction and legislative history. *Campbell & Gwinn, LLC*, 146 Wn.2d at 12.

> The statute in dispute, RCW 34.05.010(16), states in relevant part:

> "Rule" means any agency order, directive, or regulation of general applicability (a) the violation of which subjects a person to a penalty or administrative sanction; (b) which establishes, alters, or revokes any procedure, practice, or requirement relating to agency hearings; (c) which establishes, alters, or revokes any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law; (d) which establishes, alters, or revokes any qualifications or standards for the issuance, suspension, or revocation of licenses to pursue any commercial activity, trade, or profession; or (e) which establishes, alters, or revokes any mandatory standards for any product or material which must be met before distribution or sale. The term includes the amendment or repeal of a prior rule, but does not include (i) statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public.

As a preliminary matter, this definition of "rule" necessarily includes one of the five above-listed categories, regardless of whether a directive is at issue. *State v. Straka*, 116 Wn.2d 859, 868, 810 P.2d 888 (1991); *McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs.*, 142 Wn.2d 316, 322, 12 P.3d 144 (2000); *Failor's Pharmacy v. Dep't of Soc. & Health Servs.*, 125 Wn.2d 488, 493-94, 886 P.2d 147 (1994). In this case, Sudar argues that the applicable category is contained in RCW 34.05.010(16)(c). Therefore, the issues are whether Policy C-3620 is one of general applicability and whether it alters qualifications or requirements relating to the enjoyment of benefits or privileges conferred by law.

A.    Directive or Regulation of General Applicability

Sudar first argues that Policy C-3620 is a rule because it is a directive that provides authoritative instructions and specific orders as to how fish are allocated among commercial and recreational fishers, gear types that may be used, and fishery openings. Sudar further argues that Policy C-3620 is a rule of general applicability because it has been applied uniformly to all commercial fishers on the Columbia River. We disagree. Because Policy C-3620 is the

Department's vision statement written to guide agency staff and not the public, we hold that the policy is not a rule of general applicability.

Agency policy is of general applicability when it applies to all participants in a program. *Failor's Pharmacy*, 125 Wn.2d at 495; *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 398, 932 P.2d 139 (1997). In the present case, we reject Sudar's argument that Policy C-3620 provides authoritative instructions and specific orders. Instead, upon examination of Policy C-3620, we agree with the Department and hold that it is a directive to agency staff, not the public. Its purpose is to guide agency staff who are tasked with promulgating rules to regulate; however, it has no legally enforceable regulatory effect on fishers. As Coastal Conservation Association states, Policy C-3620 is only a vision for fishery management and thus is not an agency action of general applicability.

Sudar relies on *Simpson Tacoma Kraft Co. v. Department of Ecology*, 119 Wn.2d 640, 648, 835 P.2d 1030 (1992), to support his position. In that case, the court held that the Department of Ecology's standard for numeric water quality was in fact a rule because it was "an agency directive which would subject the respondents to punishment if they do not comply with the standard." *Simpson Tacoma Kraft Co.*, 119 Wn.2d at 647. Additionally, Ecology applied the formula uniformly to an entire class of entities. *Simpson Tacoma Kraft Co.*, 119 Wn.2d at 647-48.

In contrast, the vision outlined in Policy C-3620 is unenforceable until and unless the Department promulgates rules which can be enforced on violators. A fisher cannot be penalized for violating Policy C-3620. Sudar mischaracterizes Policy C-3620 as providing authoritative instructions and specific orders applied directly to fishers. Instead, the policy provides only a presumptive management framework the Department will consider along with other factors. It provides guidance in implementing a future vision for fishery management through adaptive

management. Because Policy C-3620 does not require strict adherence to its objectives and reaches only agency staff, it is not of general applicability to commercial fishermen.

        B.      Policy C-3620 does not Establish, Alter, or Revoke Qualifications or Requirements Relating to the Enjoyment of Benefits or Privileges Conferred by Law

Sudar next argues that Policy C-3620 establishes new qualifications or requirements relating to the enjoyment of commercial fishing by changing the zones in which commercial fishers may harvest salmon and requiring the use of certain gear types. RCW 34.05.010(16)(c). Because Policy C-3620 does not operate with the force of law and does not preclude commercial fishers' continued use of salmon harvesting licenses, it does not establish new qualifications or requirements relating to the benefit of commercial fishing.

An agency policy is subject to challenge as a rule pursuant to RCW 34.05.570(2) only when it imposes an independent regulatory mechanism that operates with the force of law. *Budget Rent A Car Corp. v. Dep't of Licensing*, 144 Wn.2d 889, 898, 31 P.3d 1174 (2001). When an agency directive does not add any qualifications to the statutory basis for obtaining a benefit, it does not constitute a rule. *Budget Rent A Car*, 144 Wn.2d at 898. No justiciable controversy may be alleged when agency action has no legal or regulatory effect or implicates no one's legal interests. *Wash. Educ. Ass'n v. Wash. Pub. Disclosure Comm'n*, 150 Wn.2d 612, 622, 80 P.3d 608 (2003). Policy C-3620 does not qualify or restrict the ability to hold or obtain a commercial fishing license. While it contains objectives that include phasing out the use of non-selective gill nets and reallocated shares of salmon between recreational and commercial fishers, the Policy does not regulate the time, manner, and method of fishing. The Policy does not place actual restrictions on commercial fishers. Rather, implementing rules must be adopted to manifest any type of restraint on persons outside the Department.

Policy C-3620 acts as a guide for the management of fishing activity on the Columbia River, but the Policy itself is not applicable outside of the Department. Nor is Policy C-3620 binding or dispositive on the Department. The Department developed and will continue to develop implementing rules based on the objectives of Policy C-3620 and evaluation of facts and data relevant to fishery management. Policy C-3620 does not impose an independent regulatory mechanism that operates with the force of law. Thus, it does not establish, alter, or revoke qualifications or requirements relating to the enjoyment of benefits or privileges conferred by law.

C.     Implementing Rules Not Insulated from Judicial Review

Sudar contends that because the rules adopted to implement Policy C-3620 conform to the guidance provided by the Policy, the Commission and Department may implement the Policy free of judicial review unless Policy C-3620 is challengeable as a rule under the APA. We reject this argument because treating Policy C-3620 as a rule subject to challenge requires a court to second guess agency policy determinations. Because we establish Policy-3620 is not a rule, and avenues of judicial review are available to challenge Department rules, we do not conduct a review of the policy determinations of the Commission in Policy C-3620.

Sudar argues the legal distinction between Policy C-3620 and the Department's implementing rules is "largely meaningless." Br. of Appellant at 13. This argument is unpersuasive. The Commission has separate policy and rule-making functions. RCW 77.04.055(1); .055(2) & (5). The APA encourages agencies to adopt policy statements to "advise the public of its current opinions, approaches, and likely courses of action." RCW 34.05.230(1); *Wash. Educ. Ass'n*, 150 Wn.2d at 618-19. RCW 34.05.010(15) defines "policy statement" as

> [A] written description of the current approach of an agency, entitled a policy statement by the agency head or its designee, to implementation of a statute or other provision of law, of a court decision, or of an agency order, including where

> appropriate the agency's current practice, procedure, or method of action based upon that approach.

Policy C-3620 fits squarely within the APA definition of a policy statement: it describes the current approach of the Commission to Columbia River salmon management, provides the Department a set of guiding principles to progressively implement, and prescribes the department's method of action based upon its management approach. Thus, Policy C-3620 is a policy exempt from judicial review under RCW 34.05.570(2).

We recognize that avenues of legal challenge to the Department's rules promulgated to implement Policy C-3620 are available. Sudar maintains that a challenge to the Department's implementing rules is not possible due to the short term nature of the emergency rules, arguing that emergency rules are not reviewable under RCW 34.05.720(2)(c). Sudar provides no citation in support of this argument. Despite the emergency rules' short term nature, they are not necessarily insulated from judicial review on the basis that the justiciable controversy is mooted by expiration of the rule. We apply the principle of mootness with some flexibility, and if the matter is one of significant public interest, courts may review a rule pursuant to RCW 34.05.570(2) even if it is technically moot. *In re Marriage of Horner*, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) (a court may review a moot case if it presents issues of continuing and substantial public interest); *Puget Sound Harvesters Ass'n v. Dep't of Fish & Wildlife*, 157 Wn. App. 935, 938, 944, 239 P.3d 1140 (2010) (this court affirmed the trial court's invalidation of two Department rules that were technically moot); *Tacoma News, Inc. v. Cayce*, 172 Wn.2d 58, 64, 256 P.3d 1179 (2011). In addition to remedies available under RCW 34.05.350(3), courts may review emergency rules to determine whether such actions are contrary to law or arbitrary and capricious. *State v. MacKenzie*, 114 Wn. App. 687, 698-99, 60 P.3d 607 (2002). Therefore, the Department's rules are not insulated from judicial review.

II.    MOTION TO DISMISS

The trial court did not err by granting the Commission's motion to dismiss. RCW 34.05.570(2) provides for judicial review of agency rules. The trial court may grant a CR 12(b)(6) motion when no facts exist that would justify recovery. *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994). Because Policy C-3620 is not a rule as defined by the APA, it is not subject to judicial review under RCW 34.05.570(2). Thus, no justiciable controversy exists. Accordingly, we affirm the trial court's dismissal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, C.J.

Bjorgen, J.