IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  38868-9-III |
| Respondent/Cross Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHASE TRISTAN HANSEN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant/Cross Respondent. | ) | |

COONEY, J. — Chase Hansen was charged by amended information with three counts of delivery of a controlled substance.  He was later found guilty by a jury of all three counts.  The jury also found beyond a reasonable doubt that the deliveries occurred within 1,000 feet of a school bus route stop and that the crimes constituted a major violation of the Uniform Controlled Substance Act (UCSA), chapter 69.50 RCW.  Mr. Hansen was sentenced to 44 months of incarceration on each count and ordered to pay a $500 victim penalty assessment (VPA).

Mr. Hansen appeals arguing that the amended information was defective because it did not sufficiently allege that he knew the substance he delivered was a controlled substance.  Mr. Hansen also contends there was insufficient evidence to support the jury's finding of a major violation of the UCSA aggravator.  Finally, Mr. Hansen argues that due to a recent change in the law, the VPA should be struck from his judgment and

sentence. We hold the amended information was not defective, Mr. Hansen's challenge to the major violation of the UCSA aggravator finding is moot, and that the VPA be struck from the judgment and sentence.

## BACKGROUND

On February 13, 2020, an individual working for the Ellensburg Police Department (EPD) purchased one-sixteenth of an ounce of methamphetamine from Mr. Hansen. The drug transaction was orchestrated by the EPD as a "controlled buy." Rep. of Proc. (RP) at 147-49, 195. A controlled buy is when a confidential informant, working with the police department, purchases drugs under controlled circumstances.

Later that same day, a second controlled buy yielded one-eighth of an ounce of methamphetamine from Mr. Hansen. A few months later, on May 28, the EPD coordinated a third controlled buy. This time, the EPD purchased a "20" of methamphetamine from Mr. Hansen. RP at 158-59. A 20 is an amount of methamphetamine weighing between one-half a gram to a gram.

On June 11, 2020, Mr. Hansen was charged by information with three counts of delivery of a controlled substance. The information was later amended to add school bus route stop enhancements to each count and major violation of the UCSA aggravator. For each count of delivery of a controlled substance, the amended information stated:

> He, the said, CHASE TRISTAN HANSEN, in the State of Washington, on
> or about February 13, 2020, did knowingly manufacture, deliver, or possess

2

> with intent to manufacture or deliver, a controlled substance, to wit:
> <u>Methamphetamine</u>; thereby committing the felony crime of DELIVERY
> OF A CONTROLLED SUBSTANCE, contrary to Revised Code of
> Washington 69 50 401(1) and (2)(b)

Clerk's Papers (CP) at 59. The language was the same for each count, aside from the date in count three, which was May 28, 2020. Before the trial court, Mr. Hansen never challenged the sufficiency of the amended information.

The case proceeded to a jury trial on March 15, 2022, and Mr. Hansen was ultimately found guilty of the three counts of delivery of a controlled substance. The jury also found beyond a reasonable doubt that each of the three deliveries occurred within 1,000 feet of a school bus route stop and that the crimes constituted a major violation of the UCSA.

At sentencing, the State requested an exceptional sentence of 84 months on each count. Through his attorney, Mr. Hansen urged the court to only impose the 24-month school bus route stop enhancement on each count. Ultimately, the court sentenced Mr. Hansen to 20 months on each count, the high end of the standard range. The court imposed a 24-month school bus route stop enhancement to each count to be served consecutively to the 20-month sentences. The judgment and sentence is void of any reference to the jury's major violation of the UCSA aggravator. The court also ordered a $500 VPA.

No. 38868-9-III
*State v. Hansen*

Mr. Hansen appeals.[1]

ANALYSIS

SUFFICIENCY OF THE AMENDED INFORMATION

Mr. Hansen argues the amended information was defective because it failed to allege that he knew the substance he delivered was a controlled substance.

An information is constitutionally defective if it fails to list the essential elements of the crime. *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013). An essential element is one whose specification is necessary to establish the illegality of the behavior charged. *Id*. Requiring the State to list the essential elements in the information protects the defendant's right to notice of the nature of the criminal accusation, guaranteed by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution. *Id*. We review the constitutional adequacy of a charging document de novo. *State v. Goss*, 186 Wn.2d 372, 376, 378 P.3d 154 (2016).

A defendant may raise an objection to the charging document at any time, but there is a presumption in favor of the validity of the charging documents when the challenge is made for the first time on appeal. *State v. Canela*, 199 Wn.2d 321, 329, 505 P.3d 1166 (2022). When, as here, a charging document is challenged for the first time on

_____

[1] The State cross appealed but declined to pursue its cross appeal and devotes no argument to it in its briefing. Resp't's Br. at 8 n.1.

4

appeal, we construe it liberally. *State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000). Under the liberal standard, this court has "considerable leeway to imply the necessary allegations from the language of the charging document." *State v. Kjorsvik*, 117 Wn.2d 93, 104, 812 P.2d 86 (1991).

We use a two-pronged test to resolve challenges to the sufficiency of the charging document: "(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?" *Id.* at 105-06.

Under the first prong, we look solely to the face of the charging document. *Id.* at 106. "Words in a charging document are read as a whole, construed according to common sense, and include facts which are necessarily implied." *Id.* at 109. A charging document satisfies the first prong if it includes the essential elements of the offense even if it does not contain the exact statutory language. *State v. Hopper*, 118 Wn.2d 151, 156, 822 P.2d 775 (1992). "Even missing elements may be implied if the language supports such a result." *Id.* However, "[i]f the document cannot be construed to give notice of or to contain in some manner the essential elements of a crime, the most liberal reading cannot cure it." *State v. Campbell*, 125 Wn.2d 797, 802, 888 P.2d 1185 (1995).

If the necessary elements are not found or fairly implied, we presume prejudice and reverse without reaching the second prong and the question of prejudice. *Zillyette*, 178 Wn.2d at 163; *State v. Pry*, 194 Wn.2d 745, 753, 452 P.3d 536 (2019). If a court does find all essential elements, the defendant is still entitled to reversal if he or she can show actual prejudice. *Campbell*, 125 Wn.2d at 802.

RCW 69.50.401(1) defines unlawful delivery of a controlled substance as "[e]xcept as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." Though the statute does not expressly include an intent element, *State v. Boyer* held that guilty knowledge is intrinsic to the definition of the crime of delivery. 91 Wn.2d 342, 344, 588 P.2d 1151 (1979). Thus, the elements of the crime are: "(1) delivery of a controlled substance, and (2) knowledge that the substance delivered was a controlled substance." *State v. DeVries*, 149 Wn.2d 842, 849-50, 72 P.3d 748 (2003).

In *State v. Kitchen*, the defendants were charged with unlawful delivery of a controlled substance. 61 Wn. App. 915, 917, 812 P.2d 888 (1991). In *Kitchen*, we held that the information was constitutionally defective where "[n]othing contained in [the information] implie[d] the defendants knew the identity of the substance delivered." *Id.* at 918. The information at issue stated: "[O]n or about October 8, 1988, in Klickitat County, Washington, you delivered a controlled substance, to-wit: Cocaine to an

undercover agent, contrary to RCW 69.50.401(a)(1)(i)." *Id.* at 917 (internal quotation

marks omitted).[2]

Unlike *Kitchen*, here, the amended information alleged that Mr. Hansen "did

*knowingly* manufacture, deliver, or possess with intent to manufacture or deliver, a

controlled substance, to wit: Methamphetamine." CP at 59 (emphasis added)

(underlining omitted). Because Mr. Hansen argues for the first time on appeal that the

amended information is defective, we have "considerable leeway to imply the necessary

allegations from the language of the charging document." *Kjorsvik*, 117 Wn.2d at 104.

"[E]ven if there is an apparently missing element, it may be able to be fairly implied from

language within the charging document." *Id.*

The amended information adequately implied that Mr. Hansen knew the substance

he delivered was a controlled substance. The information stated Mr. Hansen "did

knowingly . . . deliver . . . a controlled substance, to wit: Methamphetamine." CP at 59

(underlining omitted). It sufficiently alleges that Mr. Hansen knew the substance he

delivered was a controlled substance, evidenced by the term "knowingly" modifying the

rest of the sentence. Mr. Hansen would have the amended information read that he "did

knowingly . . . deliver . . . a controlled substance, to wit: Methamphetamine that Mr.

---

[2] Another information at issue in the case used substantially the same language, save for a different date. *Kitchen*, 61 Wn. App. at 917.

Hansen knew was a controlled substance." However, given our liberal standard of review, the elements of the crime can be fairly implied from the amended information.

Because we find that the necessary elements can be found in the information, we turn to whether Mr. Hansen was prejudiced by the inartful language. Mr. Hansen does not argue that he was prejudiced by the inartful language. Instead, he argues only that the elements of the crime cannot be found or fairly implied in the amended information. Because no prejudice is alleged and the necessary elements can be found in the amended information, we must affirm his convictions.

MAJOR VIOLATION OF THE UCSA AGGRAVATOR

Mr. Hansen argues that there was insufficient evidence to support the jury's finding of a major violation of the UCSA aggravator.

Mootness deters us from reviewing this assignment of error. *See State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). "An issue is moot if the matter is 'purely academic' such that the court cannot provide effective relief." *Ctr. for Bio. Diversity v. Dep't of Fish & Wildlife*, 14 Wn. App. 2d 945, 985, 474 P.3d 1107 (2020) (quoting *City of Sequim v. Malkasian*, 157 Wn.2d 251, 258, 138 P.3d 943 (2006)). If, however, the matter is of significant public interest then we may review the matter regardless of its mootness. *Sudar v. Fish & Wildlife Comm'n*, 187 Wn. App. 22, 35, 347 P.3d 1090 (2015). This exception applies where the merits of the controversy are unsettled and a

8

continuing question of great public importance exists. *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972).

The jury found Mr. Hansen's crime was a major violation of the UCSA. At sentencing, the trial court omitted from the judgment and sentence any reference to the aggravator. Furthermore, the trial court refrained from imposing an enhancement to Mr. Hansen's sentences based on the finding of a major violation of the UCSA aggravator. Consequently, even if we were to review the assignment of error and agreed with Mr. Hansen, we would be unable to provide him any relief. Because Mr. Hansen's assignment of error is specific to the jury's findings in his case, review would not resolve a continuing question of great public importance.

VICTIM PENALTY ASSESSMENT

Mr. Hansen presents numerous arguments urging us to remand for the trial court to strike the VPA from his judgment and sentence.

In April 2023, the legislature passed Engrossed Substitute H.B. 1169 (H.B. 1169), 68th Leg., Reg. Sess. (Wash. 2023), which amends RCW 7.68.035 to prohibit the imposition of the victim penalty assessment on indigent defendants. RCW 7.68.035 (as amended); H.B. 1169, at 2 ("The court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as

defined in RCW 10.01.160(3).").  H.B. 1169 took effect on July 1, 2023.  Amended

RCW 7.68.035 provides:

> (5) Upon motion by a defendant, the court shall waive any crime victim penalty assessment imposed prior to the effective date of this section if:
>
> . . . .
>
> (b) The person does not have the ability to pay the penalty assessment.  A person does not have the ability to pay if the person is indigent as defined in RCW 10.01.160(3).

Generally, statutes apply prospectively from their effective date unless the

legislature indicates that it intends otherwise.  *State v. Humphrey*, 139 Wn.2d 53, 55,

983 P.2d 1118 (1999).  However, a newly enacted statute generally applies to all cases

pending on direct appeal that are not yet final.  *State v. Jefferson*, 192 Wn.2d 225, 246,

429 P.3d 467 (2018); *State v. Pillatos*, 159 Wn.2d 459, 470, 150 P.3d 1130 (2007).

Mr. Hansen's case is pending on direct appeal and not yet final, thus he enjoys the

benefit of the amended statute.  Presumably, the trial court found Mr. Hansen indigent

when it struck from his judgment and sentence the criminal filing fee, the court-appointed

attorney fee, the drug enforcement fund, the crime lab fee, the DNA collection fee, and

the booking fee.  Later, Mr. Hansen was found to be indigent for purposes of filing this

appeal.  Thus, remand is appropriate to have the VPA struck from the judgment and

sentence.

No. 38868-9-III
*State v. Hansen*

We affirm Mr. Hansen's convictions and sentence and remand for the trial court to strike the VPA from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.

11